## Commonwealth v. Clayton

*William B. McClenachan, Jr.*, district attorney, and *Joseph D. Calhoun*, assistant district attorney, for Commonwealth.

*Edward D. McLaughlin*, for defendant.

MACDADE, J., May 10, 1941.—This is a proceeding which arose out of a petition filed as of the above number and term by the mother of an illegitimate child to compel the mother of the reputed father to support the said child. . . .

### Discussion

There is no liability at common law for the support of relatives; hence the only relatives who can be held liable are those enumerated in various statutes providing for support of indigent persons: Commonwealth v. Parrish, 19 Luzerne Leg. Reg. 465.

The proceedings in the instant case were instituted by the prosecutrix by filing her petition with this court pursuant to The Support Law of June 24, 1937, P. L. 2045, sec. 3, which provides for support of indigent persons and the procedure to enforce said support as follows: "Section 3. Relatives Liable for the Support of Indigent Persons; Procedure to Enforce Support.— (a) The husband, wife, child, father, mother, grandparent and grandchild of every indigent person shall,

if of sufficient financial ability, care for and maintain, or financially assist, such indigent person at such rate as the court of the county, where such indigent person resides, shall order or direct; . . ."

The Support Law of 1937 repeals but employs the language of the Act of June 13, 1836, P. L. 539, sec. 28, which provides:

"The father and grandfather, and the mother and grandmother, and the children and grandchildren, of every poor person not able to work, shall at their own charge, being of sufficient ability, relieve and maintain such poor person, at such rate as the court of Quarter Sessions of the county where such poor person resides shall order and direct. . . ."

It is our judgment that proceedings for support of grandchildren under the Acts of June 13, 1836, P. L. 539, and June 24, 1937, P. L. 2045, apply only to the support of legitimate children and not to illegitimate children. The support of illegitimate children is provided for under several statutes and particularly the Act of March 31, 1860, P. L. 382, which provides for the prosecution and punishment of the offender in a "fornication and bastardy" proceeding.

This reasoning finds support in the case of Commonwealth v. Smith, 36 Pa. C. C. 101, wherein the court, in discussing proceedings instituted under the Act of June 13, 1836, P. L. 539, for the support of an illegitimate child, employs the following language:

"It is a rule of construction that prima facie the word 'child' or 'children' when used in a statute means legitimate child or children. In other words, bastards are not within the term child or children."

See 5 Am. & Eng. Encyc. of Law (2d ed.) 1095, and Overseers of the Poor of Forest City v. Overseers of the Poor of Damascus, 176 Pa. 116. See also Directors of the Poor v. Hickman, 4 Dist. R. 494, wherein Judge Ewing states that illegitimates are not intended to be embraced by the Act of 1836, but only "the family rela-

tion as constituted and recognized by law"; and see Buffalo Township v. Lewisburg Borough, 1 Pa. C. C. 121, and Harkins v. The Philadelphia & Reading R. R. Co., 15 Phila. 286.

"A bastard, at common law, is nullius filius . . . he is the son of no one . . .": Appel v. Byers et al., 98 Pa. 479; Bealafeld v. Slaughenhaupt, 213 Pa. 565; Killam v. Killam, 39 Pa. 120.

The proper remedy to secure an order against a putative father for the support of an illegitimate is by indictment under section 37 of the Act of March 31, 1860, P. L. 382.

Two supplemental acts of assembly, one being the Act of May 24, 1917, P. L. 268, have been enacted germane to the subject of support by a putative father, which are not controlling law.

A case directly in point on the question presented by the instant case is Directors of the Poor v. Hickman, 4 Dist. R. 494, wherein the father of the mother of an illegitimate child resisted the imposition of an order of support being placed against him for the support of the illegitimate child, contending that, although he was the father of the mother of the said illegitimate child, yet he was not the grandfather within the meaning of the act and was not chargeable with the support and maintenance of the said illegitimate child.

The court in its opinion stated: "The determination of this matter depends entirely upon the construction given to the provisions of §25 of the Act of June 13, 1836; and being of the opinion that illegitimates are not embraced therein, but only 'the family relation as constituted and recognized by law,' it is therefore, this June 11, 1895, hereby ordered and directed that the rule to show cause be discharged at the costs of the petitioners, and the order prayed for refused."

The question of the status of an illegitimate child has been set forth rather clearly under the cases interpreting wills, distinguishing between a legitimate child and

an illegitimate child. An illegitimate child at common law is nullius filius. He is the son of no one. This is set forth in the case of Appel et al. v. Byers et al., 98 Pa. 479, wherein the court in its opinion states (p. 481) : "A bastard, at common law, is nullius filius. As he is the son of no one it is difficult to see how he can be the nephew of any one. If Philip the son of Louis was not the lawful child of a brother or sister of the testator, he could not be a lawful nephew of the latter. The question then is, when Philip the son of Martin clearly and in all respects satisfies the terms of the will, may it be shown by other evidence, that not he, but another person, was the one intended by the testator?"

This ruling is further sustained in the opinion of the court in the case of Bealafeld v. Slaughenhaupt, 213 Pa. 565, 566: "But whatever the testator may in fact have had in his mind, we have no doubt that the illegitimate child of the mother can take nothing under the terms of this will, because of the well-established rule of law that the word 'children' and like words are to be applied only to legitimate children unless the illegitimate children are otherwise described so as to leave no doubt that they are to be included: Appel v. Byers, 98 Pa. 479."

Under the above authorities it is difficult to see wherein the illegitimate child could be the grandchild of petitioner, since, under the law as set out above, she, being an illegitimate child, is the child of no one.

See Directors of the Poor v. Hickman, supra. Not being the grandchild of petitioner, it is difficult to see wherein petitioner would be obliged as a grandparent to support the said illegitimate child.

See also the discussion set forth in 30 A. L. R. 1075, as to the attitude of courts in other jurisdictions relative to statutes for support in which it is set out: "Where a statute, without making any specific reference to illegitimates, imposes on a parent or other person the duty of supporting a minor child, such statute is uni-

formly held to apply to legitimate children only, and an illegitimate child has no standing thereunder."

Prosecutions under the Act of March 31, 1860, P. L. 382, are not so much by way of obtaining support for illegitimates as a punishment for the offender: City v. Haslitt et al., 14 Phila. 138, 139.

The support provided under this act of assembly, prior to recent enactments, limited the liability of the reputed father to mere maintenance and did not impose any obligation in case of sickness or death such as the acts of assembly covering support for legitimate children: Miller v. Watt, 25 Pa. C. C. 624.